349 So.2d 424 (1977)
Anne Walker CHAMBERS
v.
Wayne P. PARKER, Registrar of the Bureau of Vital Statistics of the City of New Orleans.
No. 8229.
Court of Appeal of Louisiana, Fourth Circuit.
August 1, 1977.
Dissenting Opinion On Denial of Rehearing September 8, 1977.
Writ Refused November 4, 1977.
*425 Charles J. Yeager, Alexandria, for Anne Walker Chambers.
H. M. Westholz, Jr., New Orleans, for Wayne P. Parker.
Franklin V. Endom, Jr. (Polack, Rosenberg, Rittenberg & Endom, New Orleans), for Adoptive Couples Together, Inc. and New Orleans Right to Life Association.
C. Ellis Henican (Henican, James & Cleveland, New Orleans), for Associated Catholic Charities of New Orleans, Inc.
Robert R. Rainold, New Orleans, for Children's Bureau.
Beryle E. Wolfson, New Orleans, for Volunteers of America.
Charles I. Denechaud, Jr., New Orleans, for Charity Social Services of New Orleans d/b/a St. Vincent's Infant and Maternity Home, amici curiae.
Before REDMANN, GULOTTA and BEER, JJ.
REDMANN, Judge.
This appeal purported to present the constitutional issue, with its awesome social implications, of whether the state by sealing original birth records may impede an adopted person's desire to learn the identity of its biological parents.[1] We find that Louisiana has not attempted to do so. We affirm the trial court's judgment allowing the adopted person access to her original birth certificate and the certified copy of the decree of adoption.
Plaintiff was born in 1951 and adopted in 1954. At those times records of adoptions taking place within Louisiana were governed by La.R.S. 40:209 A (1950).[2] That statute, a revision of La.Acts 1948 No. 228 § 16, required the clerk of court to send to the division of public health statistics a "certificate of the decree" of adoption, and required the division to issue a new birth certificate. The statute added:
The Division of Public Health Statistics shall seal and file the original certificate of birth with the certificate of the decree. This sealed package shall be opened only on the order of a competent court either upon its own motion, or upon the demand of the adopted child or the adoptive parent, or the Department [of public welfare].. . .
Thus the statute does not literally purport to seal the original birth certificate or the certificate of the decree from the adopted child or from the adoptive parent.
Nor does the statute by its history suggest that the sealing was to be effective against the adopted person. One precursor, Acts 1938 No. 428 § 10, provided merely:
. . . such sealed package shall only be opened upon the demand of the said adopted child or his real or adoptive parents, the State Department of Public Welfare through the Commissioner of Public Welfare, or by order of a Court of record.[3]
Under the 1938 law it was not even necessary for an adopted person to obtain a court order; therefore no court could exercise discretion or in any way impede the adoptee's causing the opening of the records. Apparently the original intent was only to deny to curiosity-seekers free access to the original birth records of adopted persons.
*426 The adoptee or a biological or adoptive parent had unrestricted access to the "sealed" package.
Acts 1942 No. 154 § 10 removed the biological parents from those who could oblige the record-guardian to open "on demand" and for the first time required, in addition to the demand, a court order for the opening:
. . . such sealed package shall only be opened upon the demand of said adopted child or the adoptive parents, the State Department of Public Welfare through its Director of Public Welfare and then only, by order of a court of record.
But the statute gives no hint that the court would have any discretion to grant or refuse the order: presumably its only function was to verify that the party claiming to be a person entitled to demand the opening was such a person (and perhaps to curb curiosity-seekers in the department of welfare).
Acts 1948 No. 228 § 16 changed the language, but not the substance, to that of R.S. 40:209 A (1950). (Current law, R.S. 40:81, is identical except that "state registrar" replaces "department".[4])
(A similar but inapplicable provision is R.S. 40:79. That provision is little more than a renumbering of R.S. 40:206 (1950), which expressly referred to then R.S. 40:205, governing a similar procedure for obtaining birth certificates for children born within but adopted without Louisiana.)
We also note that Louisiana reserves to the adoptee the right to inherit from his blood parents, La.C.C. 214 (see also, e. g., R.S. 9:402). The legislative intent to preserve inheritance rights to the adoptee excludes, as inconsistent, any interpretation which would prevent the adoptee from learning the identity of those from whom he is to inherit.
As a court, we do not consider or even recite the compelling arguments that might prompt the Legislature to deny or to insure to an adopted person access to his own original birth record. The genuine concerns[5] of defendant and amici curiae must be presented to the Legislature, and weighed against the concerns of adoptees, for such solution as its constitutional power may permit. (Presumably Acts 1977 No. 659 is a response to some of those concerns.)
We find no basis upon which to deny plaintiff adoptee's demand to open her original birth certificate and the certificate of the decree of her adoption in defendant's possession. (R.S. 9:437 protects the confidentiality of other aspects of court adoption proceedings and it is not here at issue.) R.S. 40:209 A (1950), now R.S. 40:81 (prior to its amendment by Acts 1977 No. 659), entitles her to the relief demanded.
Affirmed.
GULOTTA, J., assigns additional reasons.
BEER, J., concurs.
GULOTTA, Judge, concurring.
I subscribe to the opinion of Redmann, J. I would add, however, that although I am sensitive to the fact that our decision in the instant case might very well result in some expressions of reticence on the part of a natural mother who intends to surrender her child for adoption, I am mindful that we are confronted with a statutory construction question which compels the result reached by us.
If the result desired is not to permit an adopted child to see the birth records, then the legislature, in clear language, should so *427 legislate. If the legislature so ordains, however, it must come to grips with the fact that a substantial obstacle is being placed in the path of an adopted child who seeks to support his inheritance claim (or indeed seeks to find out if he is entitled to inherit) from a natural parent.[1] At any rate, judicial restraint requires recognition of the problem as legislative. Accordingly, I concur with the result reached by the majority.
BEER, Judge, concurring.
I concur for the reasons stated by Gulotta, J.
BEER, Judge, dissenting from the refusal to grant a rehearing.
I voted to grant the rehearing and, had the rehearing been granted, would have changed my concurrence to a dissent. On reflection, I am of the view that LSA-R.S. 40:209 A requires a "competent court" to fulfill more important and discretionary functions than the simple verification of the identity and basis of demand of the party seeking to examine sealed adoption and birth records. I believe a competent court's duty extends considerably beyond that point and that the statute intended to require that the court make a judicial determination of whether or not the records should be opened based upon consideration of all of the evidence properly introduced by all of the various parties to the litigationexactly as it would operate in an ordinary adversary proceeding.
In this particular case, it is apparent from the record that the trial judge went no further than to make a determination that the plaintiff "has the mandatory right to bring suit." It is, therefore, obvious that the trial court's consideration of the matter went no further than the determination that plaintiff was, indeed, seeking information regarding her own birth and was, on that basis, then and there entitled to the information, all other considerations to the contrary notwithstanding.
It is my present view that the court should not have ordered the records produced without having first determined, as a competent court, that a compelling reason existed for same. Certainly, such determination is within the ambit of authority conferred by the statute. But here, it is clear that the district court stopped short of such determination.
It looks as though Act 659 of 1977, which will become effective this month, will require district courts to make the sort of determination just noted. I believe that Act 659 of 1977 is properly cited to us as a clear signal of legislative intent existent when the legislature passed that act which became LSA-R.S. 40:209 A.
Accordingly, I respectfully dissent from the majority's refusal to grant a rehearing and, also, take this opportunity to respectfully observe that if the rehearing had been granted, I would have dissented from the majority opinion for the reasons stated above.
NOTES
[1] See Comment, Discovery Rights of the AdopteePrivacy Rights of the Natural Parent: A Constitutional Dilemma, 1975, 4 San Fernando V. L.Rev. 65; Note, The Adult Adoptee's Constitutional Right to Know His Origins, 1975, 48 So.Cal.L.Rev. 1196; Sealed Records in Adoptions: The Need for Legislative Reform, 1975, 21 Catholic Lawyer 211; The Adoptee's Right to Know his Natural Heritage, 1973, 19 New York L.Forum 137.
[2] Present law, substantially identical, is R.S. 40:81.
[3] Compare Uniform Vital Statistics Act § 24 (1920), "Such sealed documents may be opened by the state registrar only upon the demand of the adopted person if of legal age or by an order of court."
[4] Acts 1977 No. 659, not yet effective, amends R.S. 40:81 to read, on this point, "This sealed package may be opened only on the order of a competent court either upon its own motion, or upon the demand of the adopted child or the adoptive parent, or the state registrar, for compelling reasons and only to the extent necessary to satisfy such compelling necessity."
[5] E. g., a pregnant woman who would otherwise give up her child for adoption may, if her identity cannot remain hidden even from the child, elect instead to abort the child. (This was not a concern of the 1950 legislature, however, because abortion was then a crime rather than a convenience.)
[1] Although, as pointed out in the majority opinion, legislation has been passed in the 1977 Regular Legislative Session (Act 659 of 1977) which requires "compelling reasons" for an adopted child to obtain access to the original birth records, the 1977 Act does not address itself to the problem raised in the concurring opinion.