362 So.2d 1195 (1978)
David H. MASSEY
v.
Wayne P. PARKER, Registrar of the Bureau of Vital Statistics of the City of New Orleans.
No. 9347.
Court of Appeal of Louisiana, Fourth Circuit.
September 12, 1978.
Writ Granted October 26, 1978.
*1196 Gerald R. Cooper, New Orleans, for plaintiff-appellee.
H. M. Westholz, Jr., New Orleans, for defendant-appellant.
Sessions, Fishman, Rosenson, Snellings & Boisfontaine, Robert E. Winn, New Orleans, amicus curiae.
Before SAMUEL, SCHOTT and GARRISON, JJ.
SAMUEL, Judge.
Plaintiff, who was adopted in the City of New Orleans on or about May 6, 1947, filed a mandamus proceeding against the defendant, the Registrar of the Bureau of Vital Statistics of the City of New Orleans, to compel the production of plaintiff's certificate of live birth. The petition sets forth his desire to determine whether he had inheritance rights from his natural parents as the reason for seeking production of that birth certificate.
The matter was first heard on March 25, 1977, at which time the trial judge ordered defendant to produce the original birth certificate for inspection by plaintiff. Defendant then sought and obtained a new trial primarily on the peremptory ground that plaintiff had failed to join indispensable parties.[1] The matter was again heard on October 24, 1977, and shortly thereafter there was judgment again ordering the defendant to produce the plaintiff's original birth certificate. Defendant has appealed from that judgment.
Adoption in Louisiana relieves the natural parents of the reciprocal rights and duties owed between parent and child, with the exception that the child retains any right he may have to inherit from his natural parents.[2] This provision is set forth in Civil Code Article 214, which provides in pertinent part as follows:
". . . the adopted person and his lawful descendants are relieved of all of their legal duties and divested of all of their legal rights with regard to the blood parent or parents and other blood relatives, except the right of inheritance from them." LSA-C.C. Art. 214.
On a previous occasion, this court has held an adopted person has the right to inspect his original birth certificate and judgment of adoption to determine if he has a right of inheritance from his natural parents.[3] However, at the time this decision was rendered, in pertinent part the relevant statutory law, R.S. 40:81 A, read as follows:
"The state registrar shall seal and file the original certificate of birth with the certificate of the decree. This sealed package shall be opened only on the order of a competent court either upon its own motion, or upon the demand of the adopted *1197 child or the adoptive parent, or the state registrar." LSA-R.S. 40:81 A.
The present suit was filed while R.S. 40:81 A was so worded. However, between the trial court's original judgment and the hearing on the new trial the statute was changed (by Act 659 of 1977, effective September 9, 1977) to provide that the same sealed packet may be opened under the following circumstances:
"The state registrar shall seal and file the original certificate of birth with the certificate of the decree. This sealed package may be opened only on the order of a competent court either upon its own motion, or upon the demand of the adopted child or the adoptive parent, or the state registrar, for compelling reasons and only to the extent necessary to satisfy such compelling necessity." LSA-R.S. 40:81 A.
The issue presented is whether the desire to determine one's legal right of inheritance under Civil Code Article 214 is a "compelling reason" within the meaning of Act 659 of 1977. We hold that it is.
In Spillman v. Parker[4] this court made the following statement with regard to the right of an adopted person to obtain his original birth certificate under R.S. 40:81 A prior to its amendment in 1977:
"This statute clearly specifies the circumstances under which the order should issue: (1) upon the court's own motion, or upon the demand of (2) the adopted child, (3) the adoptive parent, or (4) the department. By specifying the record shall be produced by court order upon the demand of the adopted child, it appears the adopted child may have the unqualified right to the court order without giving any reason therefor. However, that question is not before us. Here relator has given a valid reason for his demand.

As contended by relator, the denial of a right of inspection would have the effect of violating the right of inheritance the adopted child may have as a forced heir in the successions of his blood parents. In addition to becoming a forced heir of his adopting parents, under the provisions of Civil Code Article 214 an adopted child retains his right to inherit from his legitimate biological parents and other blood relatives. . . . In the absence of knowledge as to whom these parents might be, the child is effectively prevented from seeking his rightful share in those successions." (Emphasis added).
Thus, the court in Spillman pretermitted a discussion of the apparently mandatory language of the statute as it then read and based its decision on a finding that the necessity to make a determination of heirship is a valid reason for inspecting original certificates of birth. The language quoted above from the Spillman case also indicates a determination of heirship is also a "compelling reason" for inspection of birth certificates by an adopted person under Act 659 of 1977.
In Chambers v. Parker,[5] this court made the following statement:
"The legislative intent to preserve inheritance rights to the adoptee excludes, as inconsistent, any interpretation which would prevent the adoptee from learning the identity of those from whom he is to inherit."
This court further pointed on in Chambers that the conflict between the right of inheritance and the protection of birth records is one for solution by the legislature and not by the courts. Judge Gulotta, concurring in Chambers, further stated that if the legislature is to act in derogation of the rights of inheritance it must do so clearly and unequivocally. He further added the addition of the words "compelling reasons" to the statute by Act 659 of 1977 is not such a clear and unequivocal statement to justify effective denial of the right of inheritance to adopted persons.
We adopt the reasoning of Spillman and of Judge Gulotta's concurrence. The rights of inheritance and heirship are creatures of the legislature and have been afforded utmost *1198 respect by both the legislature and the courts throughout Louisiana's history. Protection of the birth records of adopted persons, on the other hand, has not received such extensive protective treatment[6] and seems to be regarded as subordinate to inheritance in importance by the legislature, its main purpose being to shield such records from intrusion by curiosity seekers.[7]
We therefore hold that an adopted person's right of inheritance from his natural parents, as recognized by Civil Code Article 214 is a "compelling reason" for allowing the adopted person to examine his original certificate of live birth.
For the reasons assigned, the judgment appealed from is affirmed.
AFFIRMED.
SCHOTT, J., dissenting with written reasons.
SCHOTT, Judge, dissenting:
This court in Chambers v. Parker, 349 So.2d 424 (La.App. 4th Cir. 1977) held that an adopted person was entitled to access in her original birth certificate and the certified copy of the decree of adoption. The case was decided on the basis of the then prevailing wording of LSA-R.S. 40:81A, Act. 352, of 1976, which provided in pertinent part as follows:
". . . The state registrar shall seal and file the original certificate of birth with the certificate of the decree. This sealed package may be opened only on the order of a competent court either upon its own motion, or upon the demand of the adopted child or the adoptive parent, or the state registrar."
However, the instant case which was tried in October, 1977, is controlled by Act 659 of 1977, which amended R.S. 40:81A as quoted above, to add the words after "registrar:"
". . ., for compelling reasons and only to the extent necessary to satisfy such compelling necessity."
It seems to me that we must consider the significance of these added words and to determine the intent of the legislature in adding them. For all practical purposes, my colleagues have concluded that the added words are inconsequential and the jurisprudential authority of Chambers v. Parker unaffected. I respectfully disagree.
It is fair to say that the pre-1977 version of the statute provided the trial judge with no discretion to deny a request by the adopted person for access to the file. It simply provided for some judicial intervention before a sealed package of adoption papers could be opened. In effect, the registrar, under whose control the package remained, was not at liberty to open the package on his own. In my view there was no necessity for a contradictory hearing against the registrar under the pre-1977 revision of the statute and the Chambers circumstances. At that time an adopted person was entitled to an ex parte order authorizing access to the records of his adoption.
Under the present statute, however, there must be a judicial determination on two issues before the sealed package is ordered opened. First, the court must determine if the applicant's reasons are "compelling" and, second, the court must determine to what extent the package is to be opened in order to satisfy the "compelling necessity."
In this case I believe that a proper adjudication was not made of these issues. The evidence consisted only of plaintiff's testimony who gave his reasons for wanting to see the records, i. e., he wanted to ascertain any inheritance rights he might have, to help his natural parents if they were in need and to accomplish "the basic reasons that most children have to know who their natural parents are."
If these are "compelling reasons" per se, the statute is meaningless because every *1199 adopted person can say the same. To say that this satisfied the requirements of the statute is to say that the word "because" answers the question "why?".
In order for any judicial determination to be made in our adversary system there must be appearance by or representation for the person whose interests might be adversely affected. In this case, who is that? Surely not the registrar who is only a custodian of the records charged with following the law. The only persons who might be adversely affected are the natural parents directly, and perhaps their families indirectly.
In an excellent brief, amici curiae have suggested at least one serious reason for not ordering the records open to plaintiff without an adversary proceeding and that is the natural mother's right to privacy, one of the "fundamental rights" which the United States Supreme Court held to prevent states from interfering with a woman's decision to have an abortion.[1]
The effect of the judgment of the trial court is to reveal to plaintiff the identity of someone who gave him birth and life thirty years ago, who then chose to be and has remained anonymous over all these years and who may have "compelling reasons" of health and family for remaining anonymous. No one has provided her with an opportunity to protect her privacy despite the fact that she has a fundamental right to such.
This could be done so easily and seems to me to be mandated by the statute in question. Plaintiff's records could be ordered opened "only to the extent necessary to satisfy such compelling necessity" by ordering them opened to a curator ad hoc who could, as an officer of the court, make a discreet investigation and even contact with the mother. Perhaps she would welcome the contact and the problem would be resolved amicably. On the other hand, if she wished to resist the intrusion the issue of plaintiff's reasons being compelling in comparison with her reasons could be properly adjudicated.
In such an adversary proceeding the real party at interest, i. e., the mother, through a curator, may wish to advance other reasons for the court to consider in comparison with plaintiff's before reaching a conclusion that his are compelling. Amici have properly suggested that there are social considerations which might be considered by the court in a proper adversary hearing against the mother. They are correct in their assertion that a cavalier disregard for the mother's right to privacy might discourage adoption as a life saving alternative to abortion. Surely society has an interest in saving rather than destroying lives, and this interest is more likely to be championed by the mother who made it possible for plaintiff to have life and love than by the registrar whose interest is in keeping records in accordance with the law.
Finally, addressing myself to the second part of the statute which I believe mandates a judicial determination of the extent to which the record must be opened "to satisfy such compelling necessity" a court might determine with the services of a curator and by limiting access to the curator, that plaintiff's parents are dead or that they live outside of Louisiana, examples of factors which affect his inheritance rights. Then the court would have the benefit of this information in deciding whether plaintiff's reasons for wanting to see the file are "compelling" after all.
I have concluded that the judgment should be reversed without prejudice to plaintiff to bring another suit in which there would be a complete and proper adjudication of the issues in a true adversary proceeding.
I respectfully dissent.
NOTES
[1] No such alleged indispensable parties intervened or otherwise became involved in this proceeding.
[2] Civil Code Article 214.
[3] Spillman v. Parker, La.App., 332 So.2d 573.
[4] Supra, note 3.
[5] La.App., 349 So.2d 424, 426.
[6] See the history of protection of birth certificates of adopted persons as set forth in Chambers v. Parker, supra, note 5.
[7] See Larned v. Parker, La.App., 360 So.2d 906; Chambers v. Parker, supra, note 5.
[1] Roe v. Wade, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973).