369 So.2d 1310 (1979)
David H. MASSEY
v.
Wayne P. PARKER, Registrar of the Bureau of Vital Statistics of the City of New Orleans.
No. 63222.
Supreme Court of Louisiana.
April 9, 1979.
*1311 H. M. Westholz, Jr., New Orleans, Dept. of Health & Human Resources, for defendant-applicant.
Robert E. Winn, J. David Forsyth, Sessions, Fishman, Rosenson, Snellings & Boisfontaine, New Orleans, amici curiae for Assoc. Catholic Charities of N. O., Inc.; Adoptive Couples Together, Inc., an N. O. Right to Life Assoc.
*1312 Gerald R. Cooper, New Orleans, for David H. Massey.
BLANCHE, Justice.
The Registrar of the Bureau of Vital Statistics of the City of New Orleans, defendant in this case, seeks to have this Court overturn or modify the ruling which gave plaintiff complete access to records dealing with his adoption. We granted writs to consider questions raised by this decision. Massey v. Parker, 362 So.2d 1195 (La.App. 4th Cir. 1978), writ granted 363 So.2d 1385 (La.1978).
Plaintiff was born in New Orleans in November of 1945 and was adopted in New Orleans in proceedings made final in May of 1947. The files relating to the adoption, possibly including the original birth certificate, were sealed and placed in the Archives of the Bureau of Vital Statistics. Plaintiff sought a court order to see his original birth certificate and judgment of adoption. In his petition he asserted three reasons for which he should be permitted to see the sealed records: "to ascertain his inheritance rights if any; determine the bequests he will make from his own estate; and provide for his natural parents should they be found in necessitous circumstances." Plaintiff also has asserted his desire to know the identity of his natural parents.
Plaintiff sought relief by mandamus. A hearing was held, and the district judge granted the relief requested by ordering defendant to produce the original birth certificate and judgment of adoption for plaintiff's inspection. Defendant moved for a new trial. He argued among other things that plaintiff's blood parents were indispensable parties to this litigation, since their right to privacy could be affected, and that there were some parties who wished to intervene in the proceedings. A representative of potential intervenors also filed an affidavit urging that a new trial be granted. A new trial was granted, but no intervenors or other parties made an appearance; the court rendered another verdict for the plaintiff and ordered that the records be opened to him. In his reasons for judgment the district judge quoted from Chambers v. Parker, 349 So.2d 424 (La.App. 4th Cir. 1977), writ den. 351 So.2d 170 (La. 1977)[1], and R.S. 40:81[2], as it read before the "compelling reasons" language was added to said statute. He concluded:
"The compelling reason in this case is the fact that Mr. Massey desires to ascertain if he has any inheritance rights. Also, he is ready to aid his biological parents, if they are in need of financial help."
Defendant appealed. Amici curiae [3] filed a brief on appeal. The Court of Appeal for the Fourth Circuit held:
". . . [T]hat an adopted person's right of inheritance from his natural parents, as recognized by Civil Code Article 214 is a `compelling reason' for allowing the adopted person to examine his original certificate of live birth." Massey v. Parker, supra at 1198.
Judge Schott dissented and stated:
"Under the present statute, however, there must be a judicial determination on two issues before the sealed package is ordered opened. First, the court must determine if the applicant's reasons are `compelling' and, second, the court must determine to what extent the package is to be opened in order to satisfy the `compelling necessity.'
*1313 "In this case I believe that a proper adjudication was not made of these issues." supra.
In particular, Judge Schott noted that he felt the mother was a real party at interest who ought to be represented by a curator, since she could have compelling reasons of her own to protect her privacy; because of this, the "compelling necessity" which the plaintiff could show would have to be limited if it would infringe on her rights.
The right to inherit from blood relatives was the basis for the decision in this case in both the district court and the court of appeal; each court found that this right which the law gives to adopted persons constitutes a compelling reason to allow plaintiff to view the sealed records. The trial court did not apply the statute as amended in 1977; the appellate court did. R.S. 40:81, as amended by Acts 1977, No. 659, stated:
". . . This sealed package may be opened only on the order of a competent court either upon its own motion, or upon the demand of the adopted child or the adoptive parent, or the state registrar, for compelling reasons and only to the extent necessary to satisfy such compelling necessity."[4]
This Court granted defendant's writ application. Both defendant and amici filed briefs and argued before us, urging either reversal of the decision below or such modification as would limit the inspection of the sealed records to that portion absolutely necessary to assure plaintiff his inheritance rights.
Within the last few years there has been considerable development of the laws relative to adoption and the treatment of adoption records, including the original birth certificate of the child. Earlier legislation is outlined in Chambers v. Parker, supra.[5] More recent development has followed cases which dealt with adopted persons who sought to see sealed records, usually asserting the ascertaining of inheritance rights as the reason to have the records opened.[6] The present case is the first in which this Court has granted writs. This is the latest of the cases and is one which comes after legislation requiring that a compelling reason be shown for opening the sealed records. Since 1977 the law has contained the proviso that the sealed records may be opened "only to the extent necessary to satisfy such compelling necessity." In the revision enacted in 1978 additional provisions are made:
"§ 81. * * *
"In satisfying the requirement that information shall be revealed only to the extent necessary to satisfy the compelling necessity shown, the court is authorized to use the services of a curator-ad-hoc appointed pursuant to Article 5091.2 of the Louisiana Code of Civil Procedure." Acts 1978, No. 450.
Article 5091.2 is also added to the Code of Civil Procedure to provide for the curator. Acts 1978, No. 450, § 3.
Amici have argued that the changes in the statute requiring the showing of a compelling reason and the provision for the appointment of a curator ad hoc ought to be retroactive as being remedial, as being legislation dealing with procedures rather than with substantive rights, or as further explaining or clarifying what was already in the law. Defendant and amici also have argued that the most recent legislation is *1314 intended to explain how the court must proceed and what the court must consider in determining whether to permit examination of the sealed records and to what extent examination will be permitted. We believe the changes in the statutes are designed to explain the law in light of the several court of appeal decisions and to clarify the factors to be considered by a court before it orders opening of the sealed records; the statutes as amended give guidelines and additional procedures to the courts to enable them to make a determination of when records shall be opened and the extent to which they shall be opened. We are further persuaded of the legislative intent in enacting the revisions by considering that the 1978 enactment itself makes provision for a retroactive application:
"§ 80.
"The provisions of R.S. 40:78, 79, and 81 and R.S. 9:437 shall all apply to adoption decrees rendered at any time, prior to, as well as after, the effective date of this Chapter." Acts 1978, No. 450.
The legislature has indicated that, even when a "compelling necessity" is found, there are other factors which must be considered in determining to what extent information contained in sealed records will be disclosed.
Since 1938 the statutes have required that the records of adoptions be sealed[7] with only limited access permitted. Initially the blood parents, the adoptive parents, and the adoptee had an unqualified right to see the records, then the blood parents were removed from the list of those to whom access would be given. In 1948 access was restricted to follow only from a court order.[8]
Under the law of Louisiana it is clear that a person who is adopted retains the right of inheritance from blood parents and other blood relatives. LSA-C.C. art. 214; La.Const. art. 12, § 5 (1974).[9] This right which the law gives an adopted person may constitute a compelling reason for the opening of the sealed records. Plaintiff has argued that obligations he may owe to his blood parents can constitute a compelling reason, but we find none to be compelling as there are no obligations owed by law. LSA-C.C. art. 214.
If those blood relatives from whom plaintiff could inherit are living in Louisiana or own immovable property in Louisiana, there is the potential for inheritance rights to exist. No rights to an estate can exist until there is an estate to be inherited. LSA-C.C. arts. 978, 979, 984; nor can any rights exist unless the blood relatives have lived in or owned immovable property (or other property) in a state which requires that plaintiff inherit. This being so, it must be established first whether there is in fact any estate to which plaintiff has a claim. In order to do this, there is no compelling necessity that plaintiff see the sealed records, but there is a compelling reason for the court to examine the records. In doing so, the court must be aware that others than plaintiff have a possible interest in the records which have been sealed. In this case, it could be that the blood parent (or parents) who gave the child up for adoption was assured of permanent anonymity, or has some real expectation of anonymity based upon the sealing of the records; that either or both may have a right to personal privacy which includes a right to remain anonymous is a possibility which must be recognized and dealt with by the court.
Given the circumstances of this case, and because of the lack of information which the district judge had on which to base a ruling, it is ordered that the decision *1315 below be reversed and the case be remanded for the appointment of a curator ad hoc in accordance with law. Acts 1978, No. 450. The curator shall be ordered to look into the records which have been sealed; he shall determine if the blood parents or other blood relatives are named. If not, there is no further relief which can be granted. If one is named, or if more than one are named, the court, aided by the curator, must make the further finding of whether there are any inheritance rights which presently exist. If there are, then the court shall have to determine a means by which plaintiff's rights may be assured, giving full consideration to protecting the confidentiality which may have been guaranteed to the blood parent or parents. It may be decided at this point that the parents are indispensable parties who must be joined or represented (either by counsel or by a curator) in the proceedings. LSA-C.C.P. arts. 641, 644-646, 927. Such a determination cannot be made at the present time.
In any steps which are taken, the utmost discretion and confidentiality must be observed; the situation is not one in which plaintiff alone could have rights which the law will protect; the parents' (and other relatives') right to privacy is a right which must be recognized and protected as long as it is insisted upon. There also may be an obligation owed the parent or parents arising from an agreement between one or both of them and those acting for the state or the adoption agency at the time plaintiff was given up for adoption. There may be an obligation implied from the acts of the parties at the time of the adoption. Any such obligation cannot be breached without giving the parties a right to be heard and making provision for the exercise of their rights while at the same time assuring the protection of plaintiff's right to inherit.[10]

DECREE
IT IS THEREFORE, ORDERED, ADJUDGED AND DECREED that the judgment of the district court ordering Wayne P. Parker, Registrar of the Bureau of Vital Statistics of the City of New Orleans, to produce the original birth certificate and judgment of adoption of David H. Massey for inspection be recalled and set aside.
IT IS FURTHER ORDERED that the case be remanded to the district court and the trial judge is hereby directed to appoint a curator ad hoc in accordance with law, directing said curator to examine the adoption record which has been sealed and to make such investigation and findings of fact as necessary to determine whether a compelling reason exists for the opening of said record to the said David H. Massey and the extent which said examination by the said David H. Massey shall be permitted to satisfy said compelling reasons; and more particularly, to report back to the court his findings of fact relative to whether there were any rights of inheritance by the said David H. Massey from his blood parent or parents and whether any right to privacy or anonymity exists, either express or implied, in favor of said parents based on the sealing of said record, and if so, whether said parents have a right to be heard, insuring at the same time the rights of said parent or parents and insuring the protection of the rights of the said David H. Massey, all in accordance with the views hereinabove expressed.
REVERSED AND REMANDED.
TATE, Justice, dissenting.
I respectfully dissent.
The scholarly majority opinion, as I apprehend it, recognizes that an adopted child's right of inheritance from his natural parents, Civil Code Article 214, furnishes a "compelling reason" within the meaning of the statutory phrase. La.R.S. 40:81 A (1977). By reason of this compelling need, a competent court, upon motion of an adopted child, is permitted to open the original *1316 certificate of his birth (sealed following his adoption) in order to ascertain the child's natural parents. Nevertheless, the present adopted child is not permitted to ascertain his true parentage.
The majority opinion, in its excellent reasoning, feels that through the appointment of a curator ad hoc, La.C.Civ.P. art. 5091.2 (1978), the court may ascertain if there are blood relatives living in or owning immovable property in Louisiana, so that the potential for inheritance rights exists. The curator may also ascertain whether the blood parent(s) had some real expectation of anonymity or right to personal privacy which should possibly be respected.
The remedy so authorized by statute is chimerical.
Leaving aside the questions of diligence and thoroughness of representation inherent in the often perfunctory appointment of a curator at low fee, the best that might be ascertained is that, at a given point in time, the natural parent living in Louisiana possesses no property.[1] It does not negate that the parent will acquire some thereafter. Must the adopted child bring suit again and again to re-investigate the issue, in order to vindicate his inheritance rights protected for him by our law when, without his consent, he is detached from his family and placed in a new family?
Again, the mere circumstance that his blood parents have moved from Louisiana does not deprive the adopted child of his right to inherit from them by intestacy, whether the intestacy occurs in Louisiana or elsewhere. The adoption in Louisiana vests the child with his inheritance rights from his natural parents, C.C. art. 214, and these inheritance rights are not limited to those of forced heirship nor necessarily to those provided by Louisiana law (should the blood parents have moved to another state).
The right of inheritance from one's own blood family is regarded by our law as not divestible from the child by his parents, if they surrender him for adoption. Civil Code Article 214. Nor can civil acts of human societies deprive a child of his ancestry and his membership by blood and descent in a family groupa family membership founded on unalterable laws of nature, which imparts to the individuals of the blood family a sense of the present self as forming an integral part of a greater whole of family continuing from the immeasurable past through the individual into the immeasurable future.
The statute states that the adopted child's birth certificate may be opened, for compelling reasons, on the demand of the adoptive parents or of the department, as well as of the adopted child. La.R.S. 40:81 A (1977). The compelling need of the adoptive parents or of the department for such information may, indeed, be ascertained through the mechanism of a curator ad hoc, for these parties' reason may indeed be outweighed by the natural parents' interests in maintaining their privacy.
In my opinion, however, the compelling need of the child to know his own parents, both for economic reasons of inheritance and for the emotional sense of wholeness with the past to which all individuals should be entitled, will always outweigh the interest of the blood parents in hiding their parentage from the child.[2] Whatever the merits of the blood parents' interests, in my *1317 opinion the compelling need of the child born through the laws of nature and of God to his blood parents, divested of his parents through no choice of his own, innocent of any blame whatsoevermust always outweigh those interests of the parents to hide from their child and others the unalterable fact of their parentage through which they brought into this world their child.
I would affirm the court of appeal majority and the trial court. Therefore, I must respectfully dissent from my brothers of the majority, as persuasive and as intelligent is their opinion.
TATE, J., dissents and assigns reasons.
DIXON, J., dissents and would affirm.
CALOGERO, J., dissents. The Court of Appeal was correct.
NOTES
[1] "Legislative intent to preserve inheritance rights to adoptee excludes, as inconsistent, any interpretation which would prevent adoptee from learning identity of those from whom he is to inherit. [LSA-R.S. 9:402, 40:79, 40:81, 40:205, 40:206, 40:209, subd. A; LSA-C.C. art. 214.]" [sic] See Chambers v. Parker at 426.
[2] ". . . This sealed package shall be opened only on the order of a competent court either upon its own motion, or upon the demand of the adopted child or the adoptive parent, or the state registrar." This is the wording of the statute as it was amended through 1976 (see Acts 1976, Number 352), which did not include the "compelling reasons" language; this was not part of R.S. 40:81 until the amendment in 1977.
[3] The representative for amici filed briefs on behalf of Associated Catholic Charities of New Orleans, Inc., Adoptive Couples Together, Inc., and New Orleans Right to Life Association.
[4] Similar language was included in R.S. 40:79, as amended by Acts 1976 No. 352; this was made retroactive by R.S. 40:80, though no similar retroactivity was included for R.S. 40:81 in the legislation passed in either 1976 or 1977.
[5] Present legislation is to be found primarily in R.S. 9:402, R.S. 9:421-441, R.S. 40:32-81, and R.S. 46:65(G). Attention is also called to the Acts of the Legislature in the following sequence: Acts 1932, No. 46; Acts 1936, No. 233; Acts 1938, No. 428; Acts 1940, No. 269; Acts 1942, No. 154; Acts 1948, No. 228; Acts 1976, No. 352; Acts 1977, No. 659; and Acts 1978, No. 450.
[6] The recent cases, following which there have been three years of legislative revision, are: Spillman v. Parker, 332 So.2d 573 (La.App. 4th Cir. 1976); Chambers v. Parker, supra; Larned v. Parker, 360 So.2d 906 (La.App. 4th Cir. 1978); and the current case of Massey v. Parker, Court of Appeal decision cited supra.
[7] Acts 1938, No. 428 made this provision. Also note Acts 1936, No. 233 which required that a separate book be kept and that access to this book was only by court order.
[8] Acts 1948, No. 228; cf. also Acts 1936, supra note 7.
[9] Depending upon the facts in each particular case, other laws and jurisprudence may be applicable, in addition to the general requirements.
[10] See generally, Comment, Confidentiality of Adoption Records: An Examination, 52 Tul.L.Rev. 817 (1978).
[1] In this day of universal credit, however, it is unlikely that any person possesses absolutely no property, whether land or a television set or an automobile or an interest in a community nor is forced heirship restricted to immovable property, as suggested by the majority opinion.
[2] Insofar as the relators argue that adoptions might be discouraged if the natural parents fear that their child may later learn their identity, it is sufficient to point out that for several decades an adoptive child has had the right to learn his parentage (before the recent 1977 amendments to the statute), without noticeable effect on inhibiting adoptions.

Further, the adoptive child will rarely himself move until after he is an adult to learn through court proceedings his parentage (in the relatively few number of instances when he has the interest and dedication to do so), and it might be argued that the social values involved in protecting the anonymity of the blood parents are adequately served by preserving their identity for the first twenty years of their child's life.